a finding that the relator was tried by the board upon the charge of making a willful or reckless misstatement in the circular.

The third and fourth requests, to submit the questions whether the charge was established before the board, and whether the relator had a fair and reasonable opportunity for explanation and defense upon the charges against him, are so closely allied that they must be considered together. We are not called upon to express any opinion as to the action of the relator in sending out the circular, and making the false statement as to the blackballs therein contained; but there was evidence tending to show that Mr. Johnson, the clerk of the club, had informed the relator and Bristol that only two blackballs were cast against Mr. Siegel. He was entitled to give this as one of his reasons for issuing the circular, but the relator's line of defense was demolished by the vigorous ruling that he was not permitted to discuss the rejection of Mr. Siegel, whereupon he asked for an adjournment of the proceedings for a few days, so that he could come in and make a "defense in line with the by-laws of the association," and this was refused by the board. Upon the last two questions there was evidence of such a conflicting character as to require the submission of both questions to the jury, and the refusal of the learned court to do so was reversible error.

The order appealed from must be reversed, with costs to abide the event. All concur.

(24 App. Div. 570.)

MUTUAL LIFE INS. CO. OF NEW YORK v. ROBINSON et al.

(Supreme Court, Appellate Division, Third Department. January 5, 1898.)

1. PLEADING—REPLY—PURPOSE AND EFFECT.
    Where a reply to a counterclaim in an action to foreclose a mortgage alleged that the time for paying the debt had been extended indefinitely, plaintiff could nevertheless prove the facts set forth in the complaint, and rest his case on them, without showing that the agreement for extension had ceased to operate.

2. SAME—ADMISSIONS—CONSTRUCTION.
    The fact that a reply in an action to foreclose a mortgage alleged an agreement for an indefinite extension of time for paying the debt did not preclude a recovery, where it also averred that such agreement had become inoperative before suit brought.

3. SAME—EXHIBITS.
    Where an instrument is attached as an exhibit to a pleading, but there is no averment in the pleading that it is made a part thereof, the instrument is an exhibit only as to such parts thereof as are referred to and adopted in the pleading.

4. SAME—CONSTRUCTION—ORAL OR WRITTEN CONTRACT.
    The answer alleged that plaintiff (a corporation) "agreed" with defendant, etc.; that, in reliance on such "agreement," something was done by the parties; that "to each of the agreements, mortgages, deeds, instruments of consent, and contracts above recited the said defendants will, upon the trial of this action, refer as if the same were fully and at large set forth"; alleged what occurred immediately after the "execution of said mortgages and agreements"; mentioned "a clause in the said agreement"; and averred that the "letter of such contract" required something, and that defendant "believed that to be the correct construction of the contract." Held, that plaintiff had the right to assume that the contract pleaded was in writing, and hence evidence of a parol contract was not admissible.

**5.** CORPORATIONS—OFFICERS—AUTHORITY.

Evidence of conversations with officers of a corporation is not admissible to prove an oral contract with the corporation, made thereby, without proving the authority of said officers to make the contract.

Appeal from judgment on report of referee.

Action by the Mutual Life Insurance Company of New York against David C. Robinson and another for the foreclosure of a mortgage and a sale of the premises, executed by the appellants to the plaintiff on the 24th of October, 1889, and which by its terms became due on the 24th of October, 1890. The trial was had before a referee, and judgment rendered in favor of the plaintiff for the relief asked in the complaint. From such judgment this appeal is brought. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Humphrey, Lockwood, Hoyt, Greene & Yeomans, for appellants.

Edward Lyman Short, for respondent.

PARKER, P. J. The appellants claim that the judgment in this case should be reversed for two principal reasons: First, because it appears from the reply in the case that the payment of the mortgage had been extended during the pendency of an agreement dated July 13, 1894, and that the plaintiff has failed to show that such agreement and extension were not still pending; second, that the defendants were not permitted upon the trial to make proof of the counterclaim which is set up in their amended answer.

As to the first proposition: It is true that if plaintiff had averred in its complaint that the time to pay the mortgage it sought to foreclose had been extended by an agreement dated July 13, 1894, it would have had to prove, as well as aver, that the operation of such agreement had ceased. But such is not the situation. The reply is a pleading in response, and pertinent only to the new matter set up as a counterclaim. It is not directed to the issue of the defendants' default, which is tendered in the complaint, nor does it operate as a pleading to change that issue. In the orderly conduct of the trial the plaintiff, notwithstanding the reply, could prove the facts as set forth in its complaint and rest its case upon them. The issue which it thus tendered, and which has been met by defendants' answer, has not been changed by any averment subsequently made to the new matter which that answer contained. Having established its case as set forth in the complaint, it is not called upon to do more. The burden of a defense is then cast upon the defendants. In the case before us the defendants had the right to prove as a fact that the time to pay the mortgage had been extended; and they might invoke any admissions found in the reply, as proof of that fact, provided the answer was broad enough to allow them to do so. But such admissions would come into the case only as evidence introduced by the defendants, and would be effectual only as such evidence.

Examining the case from this point of view, we find that the agreement of July 13, 1894, first appears in the case as follows: Portions of it are set forth in the reply to the defendants' counterclaim, and a copy of it is thereto annexed as an exhibit. The instrument is a volumi-

nous one, consisting of 18 articles, executed by the Guaranty Company of the first part, the plaintiff of the second part, and David C. Robinson of the other part; and was referred to in the reply in connection with averments to the effect that by it matters which are set forth in the defendants' answer, as giving him a cause of action for an accounting and for damages against plaintiff, had been settled and adjusted. By its terms all the matters in difference between the parties seem to have been adjusted, and the indebtedness from Robinson fixed, and time to pay the same by installments given him, Robinson on his part assuming many obligations other than the payment of such installments. Among other things, he was to pay interest semiannually upon all outstanding balances. The debt which the mortgage in suit was given to secure was, however, not included in the indebtedness then adjusted; but it was provided in such agreement that mortgages held by the parties of the first and second part against property of David C. and Emma A. Robinson shall be allowed to stand at 5 per cent. annual interest, pending this agreement. It is this provision that the defendants rely upon to show an extension of the mortgage in question. Certain parts of the reply were read in evidence by the defendants, but the agreement itself, in which alone the above citation is found, was not read in evidence by either party. If these averments are to be considered as evidence at all, it is because they amount to admissions on the part of the plaintiff; and it is a familiar rule that the whole of the admission must be taken and considered together. Grattan v. Insurance Co., 92 N. Y. 274–284. Very clearly, therefore, not only the averment of the execution and delivery of the agreement, but also all other averments in the reply, modifying or affecting its operation, must be read in connection with it, and must also be considered in determining its force and effect. It is distinctly averred in the reply that this agreement became inoperative a long time before the commencement of this action, by reason of the default of Robinson in performing his obligations thereunder; that the plaintiff, exercising the right given it by one of the provisions of the agreement, had declared it no longer operative, and had notified Robinson that it elected to declare the whole principal sum of his indebtedness at once due and payable. It then further avers that Robinson, when so notified, agreed that, if the plaintiff would delay foreclosure of the mortgage in question until the 1st day of May then next ensuing, he would surrender possession of the mortgaged premises to plaintiff, and no longer oppose a foreclosure of the mortgage; that the plaintiff did delay as so requested, and upon the 8th day of May, 1896, Robinson executed a written agreement, which is also set forth in the reply, wherein he agreed that the interest on such mortgage was largely overdue, that a large amount of taxes upon the property was in arrears and unpaid, and that the plaintiff was entitled to foreclose the mortgage, and to have and take possession of the mortgaged property. Now, these averments, and this last instrument, are as much in evidence as that of July 13, 1894, and, taken together, they show that whatever extension of time the appellants were entitled to under the provisions of the agreement of July 13th had ceased to be effectual at the time this action was commenced. The admission which defendants rely upon amounts to no more than this: "That by

an agreement made July 13, 1894, the payment of the mortgage in question was to be delayed during the continuance of that agreement. But that such agreement ceased to continue in May, 1896, by reason of Robinson's default, and of a subsequent written agreement wherein he substantially acknowledges that it is no longer operative." Considered as evidence, then, the reply does not sustain the defendants' claim; and even if it be conceded that, under this answer, they could avail themselves of the defense that the mortgage was not due when the action was commenced, yet the admission upon which they rely fails to establish that fact.

But if it were necessary to read the reply in connection with the complaint, and to hold that the averments as to defendants' default in the latter are modified by any averment upon that subject that can be found in the former, the above examination shows that there is not in the reply itself any averment inconsistent with the one set up in the complaint. Certain portions of the agreement of July 13th are referred to and set forth in the reply. They are pertinent to the new matter set up by way of counterclaim. The rest of that agreement, which has no bearing whatever upon such new matter, among which is the above-quoted provision regarding the extension of this mortgage, is not referred to. The agreement itself is annexed as an exhibit, but there is no averment that it is made a part of the reply, and it would appear to be an exhibit only as to such parts thereof as are referred to and adopted in the reply. The phrase, therefore, upon which the defendants rely,—the fact that the mortgage had ever been extended,—is not averred in the reply. As a pleading, the reply does not touch upon that subject. Its averments are limited to those facts only which respond to the defendants' counterclaim. Possibly, by annexing the whole of the agreement as an exhibit, its due execution is averred, but that it contains the phrase in question is not averred. This is brought into the case only by reading it in evidence. It is not a fact pleaded by the plaintiff. In this view of the case, the fact relied upon by defendants is not even before the court as evidence, for it is neither pleaded nor read in evidence.

As to the second alleged ground of error: It seems that the defendants set up by way of counterclaim to the debt secured by the mortgage in question substantially the following facts: That in May, 1893, the defendant Robinson entered into a contract with the plaintiff, whereby it agreed that if Robinson would execute to it a blanket mortgage on all his property to secure the sum of $750,000, and would procure his wife, Emma, and his sister Eleanor, to release certain claims which they had upon the property to be included therein, it (the plaintiff) would advance thereon the sum of $750,000, and would take up the paper of the defendant Robinson at the Elmira National Bank, provided the bank should be found in other respects to be solvent; that the defendant Robinson, relying upon that agreement, executed to the Guaranty Trust Company, as the agent of the plaintiff, the mortgage for $750,000, and procured the releases above mentioned, and also transferred to such Guaranty Company a large amount of property, real and personal, as collateral to such mortgage, and received from such Guaranty Company declarations of trust, whereby it assumed the control,

care, and management of the properties so transferred to it as collateral to the mortgage. It also further charged that, by reason of such act on the part of its agent, the plaintiff became chargeable with trust obligations to care for, administer, and protect such collateral securities, in such wise as to preserve the character, credit, and amount of the assets, the credit of the defendant Robinson, and the good name, credit, and resources of the Elmira National Bank, to the extent of paying the obligations due and owing to it from said Robinson; that, notwithstanding the execution and delivery to it of such mortgage and releases, the plaintiff refused to advance the $750,000, and to pay said Robinson's paper at the Elmira National Bank, although, on examination, it proved to be solvent, if such paper was paid. The answer then proceeds to aver that by reason of this breach of contract, and by reason of the willful mismanagement of the property so transferred to the Guaranty Company, done under the direction of the plaintiff and for the benefit of itself and its officers, the defendants suffered great loss and damage, for all of which the plaintiff was liable to respond to the defendants. Facts more or less relevant to such claims are set forth in the answer, but with so much detail, and in such a confused and unmethodical manner, that it is difficult to determine upon just what averments therein the cause of action by way of counterclaim is based. The above, however, is the substance of it, and the relief asked is that the damages so sustained, and the amount that should be found due upon an accounting by the plaintiff, for the mismanagement of such trust, be adjudged to the defendants by way of counterclaim in this action. In its reply to this counterclaim the plaintiff not only denies the making of such a contract, but avers affirmatively that the only agreement made at the time referred to in the answer, with respect to advancing money upon such mortgage, was such as was embodied in an agreement executed between Robinson and the Guaranty Company, under date of May 22, 1893. Upon the trial the question arose whether the defendants under their answer could prove a parol contract, and hence the first question to be considered is whether a written contract is or is not averred in the answer.

In the first place, it is alleged that "the plaintiff agreed with the defendants," etc.,—not that any officer, on the part of the plaintiff, but that the plaintiff itself, agreed. Ordinarily, a corporation agrees by written instrument under its seal. Subsequently, after stating what the defendant Robinson did in reliance upon such agreement, and what the Guaranty Trust Company did, etc., it is averred as follows: "To each of the agreements, mortgages, deeds, instruments of consent, and contracts, above recited, the said defendants will upon the trial of this action refer as if the same were fully and at large set forth." This averment certainly includes the contract upon the breach of which this counterclaim is based; and that averment clearly indicates that it was a written contract thereafter to be referred to, instead of being then fully and at large set forth. Clearly, not a contract made out from conversations had with the president or any other of the plaintiff's officers. Subsequently the answer states what occurred immediately after the "execution of said mortgages and agreements." Further on in the answer it is averred that "a clause in the said agreement provid-

ing for the said $750,000 mortgage" required said Robinson to execute further papers, if asked for, and to make a general assignment for the benefit of his creditors, if plaintiff so desired; and it is also there stated that the "letter of such contract required it, and that the defendant Robinson believed that to be the correct construction of the contract." Now, bearing in mind that there was a written contract executed by Robinson and the Guaranty Company, to whom the mortgage was given, dated May 22, 1893, fixing the terms upon which the $750,000 should be advanced, and arranging many other matters with reference to the mutual obligations of the parties concerning the collaterals accompanying the mortgage, and providing that Robinson should do some of the very things that he avers he did relying on the "said agreement," the inference is exceedingly strong that the "said agreement providing for the $750,000 mortgage" was the one of May 22, 1893. At all events, the plaintiff had the right to assume that the contract on which the defendants relied was one in writing. It had the right to so interpret the answer, and hence it was correct to so consider it upon the trial.

Doubtful phraseology in a pleading is to be construed most strongly against the pleader. Ferriss v. Insurance Co., 1 Hill, 71. When a pleading is susceptible of two meanings, that shall be taken which is most unfavorable to the pleader. Clark v. Dillon, 97 N. Y. 370–373. Upon the trial the first offer to prove the contract on which defendants relied was by calling Robinson's attention, as a witness, to a conversation had with the plaintiff's president on May 1, 1893. Upon this conversation being objected to on the ground that the contract was in writing, and that all negotiations prior thereto were merged in it, the defendants' counsel, during an argument as to its admissibility, stated as follows:

"We propose to show, through a space of a period covering several weeks, negotiations between the defendant David C. Robinson and Mr. Cromwell, the treasurer of the company; Mr. McCurdy, the president of the company; Mr. Grannis, the vice president of the company; Mr. Juilliard and Mr. Baker and Mr. Davies, trustees of the company,—Mr. Grannis, Mr. Juilliard, Mr. Baker, and Mr. Cromwell constituting a subcommittee having particular charge of this matter, known as the 'Elmira Committee,'—the whole line of negotiations, representations, and assurances on the part of this plaintiff that resulted in the delivery to them of a bond and mortgage for $750,000."

Although many questions were asked and many offers were afterwards made in a variety of forms upon that subject, the above summarizes, I think, just what defendants proposed to show to establish this contract; that is, "representations and assurances" made at different times, through weeks of negotiations, by various officers of the plaintiff. Under an averment of an "agreement made with the corporation," was the defendant in a situation to show that he executed the $750,000 mortgage relying upon such representations and assurances? And can an "agreement," if it be possible to deduce one from such "negotiations, representations, and assurances," be deemed the one set up in the answer? Clearly, I think not. The plaintiff had interpreted the answer as setting up a written contract as the basis of its counterclaim, and, knowing that there was none on that subject other than that of May 22d, had come to trial upon that understanding. In my judg-

ment, the referee was correct in excluding proof of a parol contract to be spelled out from representations and assurances of the plaintiff's officers, made during a long negotiation, which finally resulted in the execution of the $750,000 mortgage to the Guaranty Company, and the execution of the written contract of May 22, 1893. Moreover, it is to be noted that, aside from the conversation of May 1, 1893, with the plaintiff's president, and the objection to which, after argument, the referee overruled, the evidence is directed to conversations had with the Elmira committee, so called, and with the president and treasurer, secretary, or some director of the plaintiff. The inquiry is to conversations had with several officers, and in each instance seems objectionable because it does not appear that such officers had authority to bind the corporation. Even conceding the proposition that a distinct agreement made with the president of the company, and acted upon by the defendant, would be obligatory on the company, yet conversations had with him and other officers,—the committee, for instance,—call for matter that is not binding upon the plaintiff. The evidence in response to such a question would be much broader than the defendants would be entitled to. Thus, there is no evidence whatever to warrant the assumption that the Elmira committee was authorized to make loans for the plaintiff, and no presumption exists that a secretary or treasurer or a trustee of this corporation had authority to make loans for it. Conversations with such officers could hardly create a contract by plaintiff to loan $750,000 upon the blanket mortgage in question. And above all, the undisputed fact stands out prominent in this case that such mortgage was in fact never issued to the plaintiff, but to the Guaranty Company, upon terms specified in the written contract of May 22d. It was the Guaranty Company that was to make the advancements upon the mortgage, and it was to make them according to the terms of that agreement. In the face of such fact, the "representations and assurances" of the plaintiff's officers as to what advancements the plaintiff would make thereon seem to become quite immaterial. Such evidence being properly excluded, the case was utterly barren of any proof of the contract upon which the defendants based their counterclaim, and, of course, the exclusion of evidence tending to prove damages arising from its breach was also correct. I do not discover any error in the numerous rulings by the referee to which exception was taken by defendants; and, inasmuch as the defendants wholly failed to establish the alleged facts constituting their counterclaim, it was properly dismissed upon the merits.

These considerations lead to the conclusion that the judgment should be affirmed. Judgment affirmed, with costs. All concur; LANDON, J., in result.